**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John C. Johnson, Daniel Perez, and Elizabeth Perez,<br><br>        Plaintiff,<br><br>vs.<br><br>First American Title Insurance Company,<br><br>        Defendant. | No. CV-08-01184-PHX-DGC<br><br>**ORDER** |

John C. Johnson, Daniel Perez, and Elizabeth Perez filed a complaint against First American Title Insurance Company on behalf of themselves and all others similarly situated.[1] Dkt. #1-2. The complaint alleges claims of unfair discrimination pursuant to A.R.S. § 20-448(C) and unjust enrichment. Defendant filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. #6. For reasons stated below, the Court will deny the motion to dismiss.[2]

---

[1] In Plaintiffs' response to Defendant's motion to dismiss, Plaintiffs' indicate that Johnson will dismiss his claims. The Court therefore will not address the aspects of Defendant's motion directed at Johnson.

[2] Defendant's request for oral argument is denied because the parties have fully briefed the issues and oral argument will not aid in the Court's decision. *See Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

**I.     Background.**

Arizona law requires title insurance companies to file with the State a schedule of fees, manual of classifications, rules, and plans. A.R.S. § 20-376. Defendant complied with these requirements. Dkt. #1-2 ¶ 12. According to Defendant's filings, a discounted refinance rate ("discount rate") is available to certain buyers. This discount rate is 65% of the Basic Insurance Rate. *Id.* ¶¶ 13-14. In order to qualify, "the borrower and the property must be the same as previously insured within the prior five years **OR** the current owner has been insured, as to the property being encumbered, by this company within the last five years and the policy must have insured the value of the land and the current improvements located thereon." *Id.* ¶ 13 (emphasis in original). The filing conspicuously states that "[*t*]*he use of this Section shall be at the sole discretion of management if the original loan was not insured by this company.*" *Id.* ¶ 15 (emphasis in original).

On or about September 29, 2005, Daniel and Elizabeth Perez refinanced the mortgage on their home. *Id.* ¶ 45. Defendant issued the title insurance policy for the refinance and charged Plaintiffs the full Basic Insurance Rate. *Id.* ¶ 47. Their home had been covered by title insurance within the preceding five years and that policy had insured the value of the land and the home. *Id.* ¶ 45. The previous title insurance policy was not issued by Defendant. *Id.*

Plaintiffs claim that Defendant discriminated against them, in violation of A.R.S. § 20-448(C), by denying them the discount while offering it to other refinancing Arizona homeowners who had similar risks. *Id.* ¶¶ 49-50. Plaintiffs also claim that Defendant was unjustly enriched by charging the full Basic Insurance Rate rather than the discount rate.

**II.    Defendant's motion to dismiss.**

Defendant asserts that both of Plaintiffs' claims should be dismissed for failure to state a claim on which relief can be granted. Dkt. #6 at 1. Defendant contends that these claims are barred both because Plaintiffs failed to exhaust administrative remedies and because the filed rate doctrine prohibits challenges to a filed rate. *Id.* Defendant further asserts that Plaintiffs' claim for unfair discrimination is barred by the statute of limitations and the claim

- 2 -

1 for unjust enrichment fails because Defendant's actions did not impoverish Plaintiffs or
2 confer an unjust benefit on Defendant. *Id.* at 1-2.

3 **III.    Exhaustion of administrative remedies.**

4 Defendant claims that Plaintiffs are required to exhaust the administrative remedies
5 set forth in the insurance code. Dkt. #6 at 8-12. Plaintiffs do not allege that they exhausted
6 the remedies available to them, but argue instead that utilizing the administrative remedies
7 is permissive and not mandatory. Dkt. #20 at 7-12. Plaintiffs further assert that even if the
8 administrative remedies are mandatory, they do not apply to Plaintiffs' unfair discrimination
9 claim. *Id.*

10 **A.    Legal Standard.**

11 The parties agree that Arizona law governs this case. The doctrine of exhaustion
12 requires that litigants exhaust prescribed administrative remedies before seeking relief in the
13 courts. *Estate of Bohn v. Waddell*, 848 P.2d 324, 331 (Ariz. Ct. App. 1993). This doctrine
14 promotes judicial and administrative efficiency by permitting "'an administrative agency to
15 perform functions within its special competence – to make a factual record, to apply its
16 expertise, and to correct its own errors so as to moot judicial controversies." *Id.* at 331
17 (citing *Parisi v. Davidson*, 405 U.S. 34, 37 (1972)). When a party fails to exhaust
18 administrative remedies, the trial court lacks jurisdiction to review the claim. *Mountain View*
19 *Pioneer Hosp. v. Employment Sec. Comm'n*, 482 P.2d 448, 452 (Ariz. 1971).

20 Exhaustion of administrative remedies is required when an administrative agency has
21 original jurisdiction over the subject matter. *Moulton v. Napolitano*, 73 P.3d 637, 642 (Ariz.
22 Ct. App. 2004). To determine whether an agency has original jurisdiction, "the court must
23 examine whether the agency is specifically empowered to act by the Legislature." *Id.*
24 (quotations omitted). Exhaustion is usually applied by virtue of express statutory mandate.
25 *See Campbell v. Mountain States Tel. & Tel. Co.*, 586 P.2d 987, 990 (Ariz. App. Ct. 1978).

26 **IV.    Analysis.**

27 The insurance code provides administrative remedies with respect to several types of
28 claims. Chapter 2, Article 4 outlines specific administrative remedies available from the

director of insurance when any person or organization is aggrieved with respect to any filing and when a title insurer has deviated from its published rate. A.R.S. §§ 20-378, 20-379. Chapter 1, Article 2 provides the general remedy of a hearing whenever the director determines it is necessary and within the scope of the code. A.R.S. § 20-161. Defendant claims that Plaintiffs must exhaust these remedies before the Court has jurisdiction to hear their claims.

Plaintiffs argue that the administrative remedies outlined in the insurance code are permissive rather than mandatory. They base this assertion, in part, on the language of the remedy available to those aggrieved by a rate filing. Dkt. #20 at 10-11. A.R.S. § 20-378 states that a person "aggrieved with respect to any filing which is in effect *may* make written application to the director for a hearing thereon." A.R.S. § 20-378 (emphasis added); Dkt. #20 at 10. The word "may," however, does not by itself denote permissiveness. In *Mullenaux v. Graham County*, 82 P.3d 362 (Ariz. Ct. App. 2004), the Arizona Court of Appeals held that Arizona case law "solidly supports the . . . argument that the presence of the word 'may' in an administrative procedure does not necessarily render the procedure permissive." *Id.* ¶ 14. The word "may" merely denotes that the legislature cannot force an aggrieved person to bring any claim. This argument, by itself, does not persuade the Court that the administrative remedy is permissive.

Plaintiffs further argue that their claims do not fall under the express remedies provided in A.R.S. §20-378 and § 20-379. Dkt. #20 at 9-10. As discussed above, these sections provide remedies for those aggrieved by a rate filing or deviations from a filed rate. *See* A.R.S. §§ 20-378, 20-379. Plaintiffs argue that their challenge is not to the rates themselves nor to a deviation from the approved rate, but rather to the discriminatory application of the rates. Dkt. #20 at 9. According to Plaintiffs, the remedies in sections 20-378 and 20-379 do not apply to unfair discrimination claims. *Id.* The Court agrees.

Both sections 20-378 and 20-379 are located within Chapter 2, Article 4 of the insurance code titled "Rates and Rating Organizations." Section 20-378 is titled "Disapproval of title insurance filings" and section 20-379 is titled "Deviations in title

- 4 -

1  insurance rates." *Id.* These titles, although not controlling, suggest that the remedies are for
2  use by an aggrieved person or company wanting to challenge a filed rate or a deviation from
3  a filed rate. Moreover, part B of section 20-378 describes the remedies available: "If, after
4  such hearing, the director finds that the filing or a part thereof does not meet the requirements
5  of this article, he shall issue an order specifying in what respects he finds that such filing or
6  a part thereof fails to meet the requirements of this article and stating when within a
7  reasonable period thereafter such filing or a part thereof may be deemed no longer effective."
8  A.R.S. § 20-378(B). Part C provides that "[n]o filing nor any modification thereof shall be
9  disapproved if the rates in connection therewith meet the requirements of this article."
10 A.R.S. § 20-378(C). These provisions suggest that section 20-378 allows the director to
11 review the propriety of insurance filings and to find that specific filings fail to meet the
12 requirements of the insurance code. They do not suggest that the director has authority to
13 conduct a hearing concerning alleged unfair discrimination.

14 Plaintiffs' claims are based on A.R.S. § 20-448, titled "Unfair discrimination."
15 Section 20-448 is located in Chapter 2, Article 6 of the insurance code titled "Unfair
16 Practices and Frauds," separate from Article 4 where the remedies cited by Defendant are
17 located. A.R.S. § 20-448. Both section 20-448 and the article in which it is contained lack
18 any reference to an administrative remedy.

19 The Arizona Supreme Court recognizes a presumption in favor of judicial jurisdiction
20 and holds that "a divestiture of jurisdiction cannot be inferred but must be clearly and
21 unambiguously found." *Pritchard v. State*, 788 P.2d 1178, 1181. In this case, there is no
22 clear mandate from the legislature requiring the director of insurance to resolve unfair
23 discrimination claims. The remedies in sections 20-378 and 20-379 are not applicable to the
24 unfair discrimination claim. And the mere fact that Plaintiffs may have recourse to the
25 general administrative remedy of a hearing under section 20-161 is not a clear and
26 unambiguous directive from the Arizona legislature that the director of insurance will have
27 original jurisdiction over unfair discrimination claims. Without such a clear direction, the
28 presumption of judicial jurisdiction remains undisturbed.

Defendant relies on *Williams v. Bankers National Insurance Co.*, 297 P.2d 344 (Ariz. 1956). In *Williams*, the Arizona Supreme Court held that when an insurer wanted to challenge tax provisions of the insurance code, exhaustion of the hearing remedy provided in section 20-161 is required. *Id.* at 299-300; *see* A.R.S. §§ 20-161, 20-165. Plaintiffs do not contest an action by the director of insurance; they challenge alleged discrimination by insurers. *Williams*, therefore, is inapposite. Furthermore, Defendant fails to cite one case in the more than fifty years since *Williams* requiring exhaustion of administrative remedies in the context of the insurance code.

**IV.    Filed rate doctrine.**

Defendant asserts that Plaintiffs' claims are barred by the filed rate doctrine. Dkt. #6 at 12-16. This is a federal doctrine which insulates a filed rate deemed reasonable by a regulatory agency from challenge. *Qwest Corp. v. Kelly*, 59 P.3d 789, 799 (Ariz. Ct. App. 2003) (citing *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 20-21 (2d Cir. 1994)). The doctrine was developed to prevent the enforcement of price discrimination among rate payers and to preserve the role of regulatory agencies in determining reasonable rates. *Id.* Arizona has never adopted the filed rate doctrine. *Id.* at 800.

The Court need not determine whether Arizona would adopt the doctrine because it is not implicated on these facts. Plaintiffs are not challenging the reasonableness of a filed rate; they admit that both the standard and discount rates are reasonable. Dkt. #20 at 13. Plaintiffs instead allege that Defendant discriminated against them when it made the decision to charge Plaintiffs the standard rate while charging others the discount rate. *Id.* Defendant claims that Plaintiffs are challenging the discretion given to Defendant under the filed rate, but this too is incorrect. Plaintiffs are not challenging the discretion afforded Defendant, but Defendant's alleged discriminatory exercise of that discretion. As Defendant notes, "[a]pplication of the filed rate doctrine ultimately turns on 'the impact the court's decision will have on agency procedures and rate determinations.'" *Id.* (citing *Qwest*, 59 P.3d at 801). Allowing Plaintiffs to pursue their discrimination claim will not affect agency procedures and rate determinations because the rate itself is not challenged.

**V.     Statute of limitations.**

Defendant claims that Plaintiffs' unfair discrimination claim is barred by the statute of limitations. Dkt. #6 at 5. The parties agree that the relevant limitations period is one year. *See* Dkt. ## 6 at 5, 20 at 4; *see also* A.R.S. § 12-541(5). According to Defendant, the statute of limitations began to run against Plaintiffs at the time of the closing, "on or about September 29, 2005." Dkt. #6 at 6. Plaintiffs contend that the discovery rule applies to the facts of this case and that Plaintiffs did not learn of the unfair discrimination until shortly before the complaint was filed. Dkt. ##1-2 ¶¶47-52, 20 at 4-5. Plaintiffs also argue that the doctrine of equitable tolling bars application of the statute of limitations against them. Dkt. #1-2 ¶¶ 51-52.

**A.     Legal Standard.**

"[T]he statute of limitations defense . . . may be raised by a motion to dismiss . . . [i]f the running of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (citing *Graham v. Taubman*, 610 F.2d 821 (9th Cir. 1979)). "Dismissal on statute of limitations grounds can be granted pursuant to Fed. R. Civ. P. 12(b)(6) 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (citing *Vaughan v. Grijalva*, 927 F.2d 476, 478 (9th Cir. 1991) (quoting *Jablon*, 614 F.2d at 682)); *see Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996). "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); *see Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001). "'Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it is not generally amenable to resolution on a Rule 12(b)(6) motion.'" *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995); *see Federal Civil Procedure Before Trial* § 9:194, at 9-48, §9:214.1, at 9-57.

/ / /

**B.     Analysis.**

A cause of action accrues – and the statute of limitations starts to run – "when one party is able to sue another." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co.*, 898 P.2d 964, 966 (Ariz. 1995). Traditionally, this rule was interpreted to mean that the limitations period began to run "when the act upon which legal action is based took place, even though the plaintiff may be unaware of the facts underlying his or her claim." *Id.* The discovery rule is an exception that mitigates the harshness of the traditional rule. *Id.* Under the discovery rule, a cause of action accrues when "the plaintiff knows, or in the exercise of reasonable diligence, should know the facts underlying the cause." *Id.*

Defendant argue that the discovery rule does not apply in this case because the rate charged to Plaintiffs was published and the HUD-1 Settlement Statements clearly disclosed the rate Plaintiffs were charged. While Defendant's argument may show that Plaintiffs were aware or should have been aware of the price they were charged, it does not show that Plaintiffs were aware or should have been aware that others with a similar risk profile were given the discount rate.

Plaintiffs also argue that they did not know and could not reasonably have discovered that Defendant was discriminating because Defendant concealed its wrongdoing. Dkt. #1-2 ¶¶ 47, 51. Plaintiffs allege that Defendants (1) concealed or failed to inform Plaintiffs that they were eligible for the discount rate, (2) made calculated nondisclosures or misleading disclosures concerning the discount rate, and (3) as a matter of policy failed to direct its insurance agents to disclose that Plaintiffs qualified for the discount rate but would not receive it. Dkt. ##1-2 ¶¶ 47, 51, 20 at 6. In addition to fraudulent concealment, Plaintiffs assert the doctrine of equitable tolling, which "applies when the plaintiff is excusably ignorant of the limitations period and the defendant would not be prejudiced by the late filing." *Kyles v. Contractors/Engineers Supply Inc.*, 949 P.2d 63, 65 (Ariz. Ct. App. 1997).

On a motion to dismiss, the Court must accept Plaintiffs allegations as true. *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). Plaintiffs' allegations of concealment, and the factual nature of the equitable tolling inquiry, preclude dismissal on limitations grounds.

**VI.    Unjust Enrichment.**

"Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another." *Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485, 491 (Ariz. Ct. App. 2002). To establish unjust enrichment, Plaintiffs must show five elements: "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) the absence of justification for the enrichment and the impoverishment; and (5) the absence of a legal remedy." *Id.* Defendant contends that Plaintiffs' claim should be dismissed because the enrichment was not unjust because Defendant was legally entitled to charge the approved rate. Dkt. #6 at 16-17. Defendant also claims that there was no impoverishment because Plaintiffs had no legal entitlement to the discount rate. *Id.*

Plaintiffs argue that although Defendants are permitted to use discretion in determining whether to offer the discount rate, Defendant may not unfairly discriminate in its exercise of that discretion. Dkt. #20 at 14. When Defendant unfairly discriminated by charging a higher rate, Defendant was unjustly enriched and Plaintiffs were impoverished.

The Court concludes that this claim should not be dismissed at the pleading stage. Accepting Plaintiffs allegations as true, Plaintiffs have stated a claim that Defendant was unjustly enriched and they were impoverished by Defendant's receipt of an excess premium.

**IT IS ORDERED** that Plaintiffs' motion to dismiss (Dkt. #6) is **denied**.

DATED this 7th day of November, 2008.

David G. Campbell
United States District Judge