1 **WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Daniel Perez and Elizabeth Perez, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>First American Title Insurance Company,<br><br>    Defendant. | No. CV-08-1184-PHX-DGC<br><br>**ORDER** |

Daniel and Elizabeth Perez filed a complaint against First American Title Insurance Company alleging claims of unfair discrimination pursuant to A.R.S. § 20-448(C) and unjust enrichment under Arizona common law. Plaintiffs have filed a motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Dkt. #68. The motion has been fully briefed. Dkt. ##90, 99. The Court heard oral argument on the motion. Dkt. #100. For reasons that follow, the Court will grant the motion in part an deny it in part.

**I.  Background.**

Arizona law requires title insurance companies to file with the State a schedule of fees, manual of classifications, rules, and plans. A.R.S. § 20-376. Defendant complied with these requirements. Dkt. #1-1 ¶ 12. According to Defendant's filings, a discounted mortgage refinance rate ("Discount Rate") is available to certain borrowers. This Discount

Rate is 65% of the full Basic Insurance Rate. *Id. ¶¶* 13-14. In order to qualify for the discount prior to November 19, 2007, the borrower had to refinance a loan on a residential property (a parcel that is or will be used for a one to four family residence, townhouse, condominium or similar property) with Defendant. Borrowers who refinanced on or after that date had to meet the additional requirement of having a prior policy of lender's title insurance on the same property within five years before they refinanced the loan. The filing states that "[t]he use of this Section shall be at the sole discretion of management if the original loan was not insured by this company." *Id.* ¶ 15 (emphasis deleted).

On or about September 29, 2005, Plaintiffs refinanced the mortgage on their home. *Id.* ¶ 45. Defendant issued the title insurance policy for the refinance and charged Plaintiffs the Basic Insurance Rate. *Id.* ¶ 47. Plaintiffs home had been covered by title insurance within the preceding five years. *Id. ¶* 45. The previous title insurance policy was not issued by Defendant. *Id.*

Plaintiffs claim that Defendant discriminated against them, in violation of A.R.S. § 20-448(C), by arbitrarily denying them the Discount Rate while offering it to other refinancing Arizona homeowners who had similar risks. *Id.* ¶¶ 49-50. Plaintiffs also claim that Defendant was unjustly enriched by charging the Basic Insurance Rate rather than the Discount Rate. *Id.* ¶¶ 60-66.

**II.  Rule 23 Requirements.**

Under Rule 23(a), a district court may certify a class under Rule 23 only if the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the claims of the representative parties are typical of the claims of the class, and the representatives will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)-(4). Under Rule 23(b), the court must also find that the prosecution of separate actions would create a risk of rulings that are inconsistent or dispositive of the interests of non-parties, the party opposing the class has acted on grounds generally applicable to the class thereby making declaratory relief appropriate, or that questions of law or fact common to class members predominate over any questions affecting only individual

1 | members and that a class action is superior to other available methods for resolving the controversy. Fed. R. Civ. P. 23(b)(1)-(3). The party seeking class certification "bears the burden of showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007) (citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001)); *see Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The court must rigorously analyze the facts of a class action to ensure that it comports with Rule 23. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

**III. Analysis.**

Plaintiffs seek certification of a class generally defined as individuals who paid premiums for the purchase of lender's title insurance from Defendant or its agents in connection with refinance transactions on residential properties located in Maricopa County, Arizona, and who qualified for the Discount Rate but did not receive it. *See* Dkt. #1-1 ¶ 31; Dkt. #68 at 3. Plaintiffs argue that all requirements of Rule 23(a) have been met (Dkt. #68 at 8-12), and that a class should be certified under Rule 23(b)(1), (2) and (3) (*id.* at 12-20).

    **A.    Rule 23(a).**

        **1.    Numerosity.**

A proposed class satisfies the numerosity requirement if class members are so numerous that joinder would be impractical. Fed. R. Civ. P. 23(a)(1). "Generally, 40 or more members will satisfy the numerosity requirement." *Garrison v. Asotin County*, 251 F.R.D. 566, 569 (E.D. Wash. 2008); *see Wamboldt v. Safety-Kleen Sys., Inc.*, No. C 07-0884 PJH, 2007 WL 2409200, at *11 (N.D. Cal. Aug. 21, 2007) (courts have found that "numerosity is satisfied if the class comprises 40 or more members"); *see also Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982) (class sizes of 39, 64, and 71 sufficient to satisfy numerosity requirement). "The party seeking class certification need not identify the precise number of potential class members." *Garrison*, 251 F.R.D. at 569; *see Chesner v. Stewart Title Guar. Co.*, No. 1:06CV00476, 2008 WL 553773, at *5 (N.D. Ohio Jan. 23, 2008).

1 | In support of its claim that the Court has original jurisdiction over this action, Defendant avowed that "[t]here clearly are more than 100 putative class members." Dkt. #1 ¶ 17. Plaintiffs have presented evidence showing that more than 700 individuals appear to fall within the proposed class. *See* Dkt. #68 at 8. Defendant challenges this evidence (Dkt. #90 at 22), but the Court is satisfied that the proposed class includes hundreds of persons. *See Cohen v. Chicago Title Ins. Co.*, 242 F.R.D. 295, 299 (E.D. Pa. 2007) (courts "are permitted to 'accept common sense assumptions' about the numerosity requirement") (citation omitted); *Garrison*, 251 F.R.D. at 569 (requirement is met "so long as general knowledge and common sense indicate that joinder would be impracticable"); *Chesner*, 2008 WL 553773, at *5 (same). Because joinder of hundreds of individuals would be impracticable, the numerosity requirement has been satisfied. *See Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 556-57 (D. Md. 2006) ("Plaintiffs estimate that the number [of class members] most certainly would exceed the 40 members generally accepted to be sufficiently large to make joinder impracticable. In this circumstance the numerosity prong of Rule 23 is satisfied.").

### 2. Commonality.

A proposed class satisfies the commonality requirement if there is at least one question of fact or law common to the class. Fed. R. Civ. P. 23(a)(2); *see Chesner*, 2008 WL 553773, at *5. This requirement "is construed permissively." *Garrison*, 251 F.R.D. at 569 (citing *Dukes*, 509 F.3d at 1177). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

This case presents several common questions of fact and law: whether Defendant arbitrarily denied the Discount Rate to class members and, if so, whether such denial subjected the class members to "unfair" discrimination under A.R.S. § 20-448(C) and unjustly enriched Defendant. These issues satisfy the commonality requirement. *See Mitchell-Tracey*, 237 F.R.D. at 557 (requirement met where "the central question shared by all members of the proposed classes [was] whether they [were] eligible for and entitled to the

'reissue rate' under the Defendants' filed rates, and whether they failed to receive that rate as a result of Defendants' wrongdoing"); *Cohen*, 242 F.R.D. at 299 (common issues included whether the defendant and its agents "negligently and deceptively failed to charge the discounted rates for title insurance"); *Chesner*, 2008 WL 553773, at *6-8 (requirement met where the plaintiff's theory of liability was that application of the discount rate was mandatory as to all class members and the defendant wrongfully failed to provide that rate to the class); *Slapikas v. First Am. Title Ins. Co.*, 250 F.R.D. 232, 242 (W.D. Pa. 2008) (common issue included whether class members "were eligible for a discounted rate for title insurance, but paid the full basic rate"); *Randleman v. Fidelity Nat'l Title Ins. Co.*, 251 F.R.D. 267, 275 (N.D. Ohio 2008) (common issues included whether class members "were eligible for and entitled to the discounted rate" and whether "they failed to receive that rate as a result of Fidelity's systematic wrongdoing"); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 564 (E.D. Mich. 2009) (common issue included whether the defendant "provided premium discounts when the transaction involved a mortgage refinancing").

### 3. Typicality.

This Circuit "has noted that 'the commonality and typicality requirements of Rule 23(a) tend to merge.'" *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 510-11 (N.D. Cal. 2007) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)). This is because a plaintiff's claim "is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members and his or her claims are based on the same legal theory." *Id.* at 511 (citation and quotation marks omitted).

The alleged facts underlying Plaintiffs' claims, and the legal theories supporting them, are typical of the putative class members' claims. Consistent with the proposed class definition, Plaintiffs obtained title insurance in connection with a refinance of their home in Maricopa County, they were eligible for the Discount Rate, but Defendant (through its agent) charged them the Basic Insurance Rate. Dkt. #1-1 ¶¶ 45-47. Although Plaintiffs' refinance occurred in 2005, and their claims are therefore not identical to the putative class members who refinanced after Defendant's rate manual changed in November 2007, representative

claims need not be identical to satisfy Rule 23(a)'s "permissive standards[.]" *Hanlon*, 150 F.3d at 1020. Rather, representative claims "are 'typical' if they are reasonably co-extensive with those of absent class members[.]" *Id.*; *see Cohen*, 242 F.R.D. at 299 ("'[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories.'") (citation omitted); *Mitchell-Tracey*, 237 F.R.D. at 558 ("'[W]hile claims of particular individuals may vary in detail from one to another, the collective claims focus on particular policies applicable to each class member thereby satisfying the typicality requirement of Rule 23(a)."); *Randleman*, 251 F.R.D. at 276 ("[T]he Randlemans' claims and the claims of the other class members do not need to be factually indistinguishable in order to meet the requirement of typicality."); *Hoving*, 256 F.R.D. at 564 ("Although the named plaintiffs' claims must fairly encompass the class members' claims, they need not always involve the same facts or law.").

Defendant asserts that Plaintiffs' claims are not common or typical of the class claims because Plaintiffs are subject to a number of unique defenses (Dkt. #90 at 21), but Defendant does not explain why the asserted defenses are unique and would not apply to a substantial portion of the class. The Court concludes, on the present record, that the typicality requirement is satisfied. *See Mitchell-Tracey*, 237 F.R.D. at 557 (typicality and commonality requirements satisfied where affirmative defenses likely would be asserted against a large number of plaintiffs); *Randleman*, 251 F.R.D. at 276 (same); *see also Cohen*, 242 F.R.D. at 299; *Slapikas*, 250 F.R.D. at 242; *Chesner*, 2008 WL 553773, at *9; *In re Coordinated Title Ins. Cases*, No. 010764/2002, 2004 WL 690380, at *9-10 (N.Y. Sup. Ct. Jan. 8, 2004).

### 4. Adequacy.

The adequacy requirement is satisfied if the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The Court finds that Plaintiffs' "interest in this litigation is coextensive with that of the unnamed class members, and they are perfectly capable of vigorously prosecuting this action through their well-qualified counsel." *Chesner*, 2008 WL 553773, at *10. The adequacy requirement is therefore satisfied. *See id.*; *Mitchell-Tracey*, 237 F.R.D. at 558; *Cohen*, 242 F.R.D. at 299;

*Slapikas*, 250 F.R.D. at 242-43; *Randleman*, 251 F.R.D. at 276.

**B.  Rule 23(b).**

Plaintiffs argue that the class should be certified under all three subsections of Rule 23(b). The Court will address Plaintiffs' arguments starting with Rule 23(b)(3).

**1.  Rule 23(b)(3).**

A class may be maintained under Rule 23(b)(3) where questions of law or fact common to the class predominate over questions affecting only individual members, and a class action is superior to other available methods for resolving the controversy. A critical question in the Rule 23(b)(3) analysis is what Plaintiffs will have to prove to prevail at trial. If proof of liability would involve transaction-by-transaction analysis, then individual issues will predominate. If, however, liability can be established on a class-wide basis, common issues will predominate and a class action will serve as the most efficient means of resolving the controversy.

**a.  The claim under A.R.S. § 20-448(C).**

Plaintiffs claim that Defendant has violated A.R.S. § 20-448(C). This section provides:

> As to kinds of insurance other than life and disability, a person shall not make or permit any unfair discrimination in favor of particular persons or between insureds or subjects of insurance having substantially like insuring, risk and exposure factors, or expense elements, in the terms or conditions of any insurance contract, or in the rate or amount of premium charged.

Plaintiffs claim that Defendant engaged in this type of discrimination when it denied them the Discount Rate that it gave to others who were similarly situated.

To decide whether common issues will predominate over individual issues, the Court must address the proof required to establish a violation of the statute. Of particular note is the fact that the statute prohibits not just discrimination, but "unfair" discrimination. Plaintiffs claim that unfair discrimination occurs any time an insurer distinguishes between people having "like insuring, risk and exposure factors, or expense elements." Stated differently, if two individuals have the same risk and exposure factors and the same expense elements, then any distinction between them in rates, benefits, or other treatment by the

insurance company constitutes unfair discrimination.

Such a reading effectively eliminates the word "unfair." Violation of the statute would occur every time a distinction is drawn between people with the same risk and exposure factors and expense elements. No inquiry into the fairness of the distinction would be required. The Court cannot accept a construction of this Arizona statute that eliminates the word unfair. As Arizona courts have explained, "[i]n construing a statute, the court will favor that construction which gives meaning to every word and avoid that which makes some words idle and nugatory." *Snyder v. Lena*, 703 P.2d 527, 529 (Ariz. App. 1985); *see also Torrez v. State Farm Mut. Auto. Ins. Co.*, 635 P.2d 511, 515 (Ariz. App. 1981) ("In interpreting statutes, each word is to be given meaning."). Persons making claims under the statute must therefore show not only that they were treated differently from another person who had the same risk and exposure factors and expense elements, but also that the different treatment was unfair.

The structure of the section 20-448 supports this interpretation. Sections 20-448(A) and (B) also prohibit "unfair discrimination," but they do not have the same focus on risk and exposure factors or expense elements as does subsection (C). If the word "unfair" was meant to simply capture distinctions between people with the same risk factors, then presumably it would not have been used in these other sections.

The Court's interpretation of section 20-448(C) is also supported by *Lans v. Mutual Life Insurance Co. of New York*, 699 P.2d 1299 (Ariz. Ct. App. 1985). *Lans* explicitly held that plaintiffs under subsection (B) must not only prove that they were of the same class as a person who was treated more favorably, but also that the discrimination was "unfair": "A.R.S. § 20-448(B) prohibits *unfair* discrimination between individuals of the same class and of essentially the same hazard. This is far different language than that employed in the other statutes which specifically enumerate the prohibited classifications and prohibit *any* discrimination." *Id*. at 1302 (emphasis in original). The *Lans* court went on to distinguish between "unfair discrimination" and "fair discrimination." *Id.* While the court did not explain what is meant by "unfair," its discussion of the term precludes a finding that it is

- 8 -

1 meaningless.

2 Defendant stakes out a position at the other end of the spectrum. Defendant agrees
3 that "unfair" has independent meaning, but argues that its meaning is limited to invidious
4 discrimination. Defendant contends that a distinction between insurance purchasers with
5 similar risk factors violates the statute only if the discrimination is based on some suspect
6 class such as gender, race, or age. In the absence of invidious discrimination, Defendant
7 asserts, the statute is not violated. Defendant provides no authority to support this position,
8 and the Court finds nothing in the statute to suggest it is correct. Moreover, *Lans* suggests
9 that even discrimination based on gender may be fair in some circumstances and unfair in
10 others. *See id.* at 1301.

11 The Court concludes that the word "unfair" in section 20-448(C) has some meaning
12 in addition to distinguishing among individuals with the same risk factors, but does not
13 require invidious discrimination. The Court need not determine the precise meaning of
14 "unfair" at this time, however, because Defendant does not contend that discounts were
15 denied to its customers on some fair basis. Counsel for Defendant stated during the hearing
16 on class certification that Defendant does not know why discounts were denied. Defendant
17 has no evidence that they were denied on the basis of risk factors or some other arguably fair
18 consideration. Defense counsel stated that Defendant established no criteria for the exercise
19 of discretion in denying discounts. Thus, on the present record, it appears that the discounts
20 were denied arbitrarily. Because Defendant has provided no reason to believe that the
21 denials were fair, and an arbitrary denial is likely to be viewed as an unfair denial, the Court
22 concludes on the present record that the element of unfair discrimination likely can be
23 established on a class-wide basis. Common issues therefore will predominate.

24 Defendant contends that an unlawful discrimination claim cannot lie under section
25 20-448(C) because section 213.1 of the rate manual gave "management" discretion to deny
26 the Discount Rate, and this rate manual was approved by the Department of Insurance. This
27 direct attack on the merits is not appropriate at the class certification stage. Moreover, the
28 Court cannot agree that approval by the Department of Insurance constitutes a license to

1 engage in unfair discrimination. Section 20-448(C) has meaning independent of the
2 Department's approval of the rate manual. *See Lans*, 699 P.2d at 1300-02 (implicitly
3 rejecting the argument that prior approval by the Department of Insurance eliminates a later
4 unfair discrimination claim).

### b. The unjust enrichment claim.

Defendant contends that the unjust enrichment claim is "inappropriate for class certification because of the need for individual proof of inequitable circumstances." Dkt. #90 at 17. Plaintiffs have made clear, however, that there are no "unique equitable issues in this case" and that the unjust enrichment claim "flows directly from a determination that they were overcharged for title insurance." Dkt. #99 at 11. Put another way, Plaintiffs claim that Defendant was unjustly enriched when it unfairly discriminated against Plaintiffs by arbitrarily denying them the Discount Rate. Because the unjust enrichment claim essentially mirrors the statutory claim, and because Defendant is not claiming some fair basis for its denial of the Discount Rate, the Court finds that common issues predominate with respect to the unjust enrichment claim. *See Slapikas*, 250 F.R.D. at 248 ("A determination whether an overcharge by First American is 'unjust' is common to all putative class members and appropriate for class treatment."); *Coordinated Title Ins. Cases*, 2004 WL 690380, at *8 (certifying unjust enrichment claim where the defendant presented no evidence that some class members may have acted inequitably in not requesting discount rate); *see also Cohen*, 242 F.R.D. at 299; *Hoving*, 256 F.R.D. at 570; *Randleman*, 251 F.R.D. 275; *Mims v. Stewart Title Guar. Co.*, 254 F.R.D. 482 (N.D. Tex. 2008).

### c. Superiority of a class action.

The Court's conclusion that common issues predominate does not end the Rule 23(b)(3) inquiry. The Court must also consider whether a class action is superior to other available methods for resolving the controversy. For claims arising under the pre-2007 version of section 213.1 of Defendant's rate manual, Plaintiffs claim that they need only prove that (1) they refinanced a residential loan, (2) with Defendant, and (3) they were denied the discount provided by section 213.1. After 2007, Plaintiffs presumably will need

1  to prove that (1) class members refinanced a residential loan, (2) with Defendant, and
2  (3) they had a prior policy of title insurance on the same property in the five years before
3  they refinanced the loan. Plaintiffs contend that each of these facts can be proved from
4  databases or other common documents maintained by Defendant. Defendant disagrees,
5  arguing that a class action will be unmanageable because it has no database or other central
6  source of information that will enable it or Plaintiffs to determine whether purchasers of title
7  insurance had a previous policy of title insurance within the last five years.

"Manageability concerns have been rejected uniformly by courts confronting similar circumstances." *Chesner*, 2008 WL 553773, at *16 (citations omitted). Even if it takes a substantial amount of time to review files and determine who is eligible for the discount, that work can be done during discovery. Plaintiffs can then identify the individuals who are eligible for the discounts and did not receive them. If the jury agrees that such individuals are entitled to a recovery under section 20-448(C) or the doctrine of unjust enrichment, then proof of class membership would be relatively easy. In short, while this issue may involve a file-by-file review, it will not require a file-by-file trial. The Court concludes that a class action will be manageable and is the superior method for resolving the dispute. *See Slapikas*, 250 F.R.D. at 250 (finding class action manageable despite First American's assertion that "no database exists easily and efficiently to make the determination that would be required for each file"); *Cohen*, 242 F.R.D. at 302 (finding that absent evidence showing that a search for class members would be impossible, a class action was not unmanageable even though the defendant had no computerized database collecting the policies written by hundreds of agents in the state); *Mitchell-Tracey*, 237 F.R.D. at 560 (finding class action manageable even though the task of identifying potential class members "may prove to be a laborious one"); *Randleman*, 251 F.R.D. at 280-81 (finding class action manageable even though discovering the information about homeowners who did not get the benefit of a discount rate "may be very costly and time-consuming"); *Coordinated Title Ins. Cases*, 2004 WL 690380, at *8 (concluding that any manageability concerns failed to outweigh benefits of trying the cases as class actions); *Hoving*, 256 F.R.D. at 570 (concluding that "[c]lass treatment was a

superior method of adjudicating the dispute").

### 2. Rule 23(b)(2).

A class may be maintained under Rule 23(b)(2) where the defendant's conduct applies generally to all class members, thereby making injunctive or declaratory relief appropriate with respect to the class as a whole. In order to permit certification under this rule, however, "the claim for monetary damages must be secondary to the primary claim for injunctive or declaratory relief." *Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir. 2003). This is because "[i]ndividualized claims for damages in the class action setting present due process concerns, particularly in the context of no-notice, no-opt out classes." *Id.*

Although Plaintiffs seek injunctive relief, they have not alleged that any class member is likely to be a customer of Defendant in the future. Plaintiffs primarily seek damages – reimbursement of the difference between the Basic Insurance Rate they were charged and the Discount Rate they claim they should have been charged. *See* Dkt. #1-1 ¶¶ 23, 30, 40, 50, 54, 59, 66. This is a substantial amount of money given that Discount Rates are significantly lower than full Basic Insurance Rates. *See id.* ¶¶ 4-5. The Court concludes that this case primarily is an action for damages and certification under Rule 23(b)(2) is therefore inappropriate.

### 3. Rule 23(b)(1).

A class action is maintainable under Rule 23(b)(1) if prosecution of separate actions would create a risk of inconsistent or varying adjudications that would establish incompatible standards for the party opposing the class. Fed. R. Civ. P. 23(b)(1)(A). Although Plaintiffs assert in their motion that certification is appropriate under this rule, neither side addresses the issue in their respective response and reply briefs. As explained above, this is an action primarily for damages. Certification under Rule 23(b)(1)(A) is not appropriate. *See Zinzer v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001).

### C. Class Definition.

Plaintiffs seek certification of the following proposed class:

All persons who paid premiums to Defendant First American Title Insurance

> Company or its agents for the purchase of lender's title insurance in connection with refinance loans on residential property in Maricopa County, Arizona, and who qualified for, but did not receive, the revamping/refinance premium rate. For the purpose of this definition, residential property includes a parcel that is or will be used for a one-to-four family residence, townhome, condominium or similar structure.

Dkt. #68 at 3.

Defendant argues that the class definition is impermissibly overbroad because it contains no time limitations and may include individuals with time-barred claims. Dkt. #90 at 24. While the Court is troubled by Plaintiffs' failure to place time limits on the proposed class, the Court will not deny certification on this basis. Discovery may provide the temporal scope of the class, and because Plaintiffs assert tolling of the limitation period on grounds of fraudulent concealment on the part of Defendant – an issue likely susceptible to class-wide determination – the Court cannot presently determine that claims will be excluded from the proposed class as time-barred. The class definition "is subject to refinement based upon further development of the record, and can be expanded or contracted if the facts so warrant[.]" *Geer v. Cox*, 216 F.R.D. 677, 680 (D. Kan. 2003).

Defendant further argues that by defining the class in terms of individuals who "qualified for, but did not receive" the Discount Rate, Plaintiffs have proposed an impermissible "fail safe" class. The Court agrees that Plaintiffs' liability-based definition is improper. "This defect is, however, rather easily cured by recasting the definition in terms of Plaintiffs' liability theory, and making class membership contingent instead on whether the objective fact that Plaintiffs believe trigger entitlement to the discount were present in a particular transaction." *Chesner*, 2008 WL 553773, at *4; *see Slapikas*, 250 F.R.D. at 250-51; *Cohen*, 242 F.R.D. at 297 n.2. The Court will exercise its discretion and redefine the proposed class as follows:

> All persons who did not receive the revamping/refinancing discount rate and who (i) prior to November 19, 2007, paid premiums to Defendant First American Title Insurance Company or its agents for the purchase of lender's title insurance in connection with refinance loans on residential property (a parcel that is or will be used for a one to four family residence, townhouse, condominium or similar property) located in Maricopa County, Arizona, or (ii) on or after November 19, 2007, paid premiums to Defendant or its agents

for the purchase of lender's title insurance in connection with refinance loans on residential property located in Maricopa County, Arizona and who had a prior policy of lender's title insurance on the property within five years of the refinance.

**IV. Conclusion.**

Each of the four Rule 23(a) requirements – numerosity, commonality, typicality, and adequacy – has been satisfied. It is appropriate to certify the proposed class, as redefined above, under Rule 23(b)(3), but not Rule 23(b)(1) or (2).

**IT IS ORDERED** that Plaintiffs' motion for class certification is **granted in part** and **denied in part** as set forth in this order.

DATED this 12th day of August, 2009.

_David G. Campbell_
David G. Campbell
United States District Judge