1 **WO**
2
3
4
5
6 **IN THE UNITED STATES DISTRICT COURT**
7 **FOR THE DISTRICT OF ARIZONA**
8

| | |
|---|---|
| Daniel Perez and Elizabeth Perez, on behalf of themselves and all others similarly situated, ) ) ) | No. CV-08-1184-PHX-DGC |
| ) | **ORDER** |
| Plaintiffs, ) ) | |
| vs. ) ) | |
| First American Title Insurance Company, ) ) ) | |
| Defendant. ) ) | |

In September 2005, Plaintiffs Daniel and Elizabeth Perez refinanced the mortgage on their home located in Laveen, Arizona. Defendant First American Title Insurance Company issued the title insurance policy for the refinancing. Plaintiffs were charged a $1,508 premium for the title insurance – the basic insurance rate.

On May 23, 2008, Plaintiffs filed a class action complaint against Defendant alleging unfair discrimination pursuant to A.R.S. § 20-448(C) and unjust enrichment under Arizona common law. Dkt. #1-1 at 6-21. Plaintiffs allege that Defendant discriminated against them and other class members in violation of A.R.S. § 20-448(C) by arbitrarily denying them a discount rate while offering it to other refinancing Arizona homeowners who had similar risks. *Id.* ¶¶ 48-50. Plaintiffs further allege that Defendant was unjustly enriched by charging the basic insurance rate rather than the discount rate. *Id.* ¶¶ 60-66.

Pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, the Court certified a class defined as follows:

> All persons who did not receive the revamping/refinancing discount rate and who (i) prior to November 19, 2007, paid premiums to Defendant First American Title Insurance Company or its agents for the purchase of lender's title insurance in connection with refinance loans on residential property (a parcel that is or will be used for a one to four family residence, townhouse, condominium or similar property) located in Maricopa County, Arizona, or (ii) on or after November 19, 2007, paid premiums to Defendant or its agents for the purchase of lender's title insurance in connection with refinance loans on residential property located in Maricopa County, Arizona and who had a prior policy of lender's title insurance on the property within five years of the refinance.

Dkt. #102 at 13-14.

Defendant argued that the proposed class definition is impermissibly overbroad because it contains no time limit and may include individuals with time-barred claims. Dkt. #90 at 24. The Court noted that it was troubled by Plaintiffs' failure to place time limits on the proposed class, but declined to deny certification on this basis because discovery may provide the temporal scope of the class and because Plaintiffs assert tolling of the limitation periods based on fraudulent concealment, an issue susceptible to class-wide determination. Dkt. #102 at 13.

As required by the Court and after completing discovery related to this issue (Dkt. #108), the parties have filed memoranda on the temporal scope of the class. Dkt. ##169, 186, 189, 190. Defendant argues that individuals whose claims are time-barred must be excluded from the class. Dkt. #169 at 6. Defendant proposes a class period between May 23, 2007 and November 19, 2007 for the unfair discrimination claim and a class period between May 23, 2005 and November 19, 2007 for the unjust enrichment claim. *Id.* at 3. Plaintiffs propose a class period between April 18, 1997 and November 19, 2007, due to Defendant's uniform pricing practices during this period. Dkt. #186 at 2. A hearing was held on April 9, 2010. Dkt. #196. For reasons that follow, the Court concludes that the class must be defined to exclude individuals with claims that may be time-barred.

## I. Rule 23 and Statutes of Limitations.

A Rule 23 "class action cannot proceed on behalf of class members whose claims are time-barred." *Duprey v. Conn. Dep't of Motor Vehicles*, 191 F.R.D. 329, 340-41 (D. Conn. 2000); *see Daniels v. Fed. Reserve Bank of Chicago*, 194 F.R.D. 609, 618 (N.D. Ill. 2000)

- 2 -

("'individuals with time-barred claims may not be included within a proposed class'") (citation omitted); *Roberts v. Source for Public Data*, No. 2:08-cv-04167-NKL, 2009 WL 3837502, at *7 (W.D. Mo. Nov. 17, 2009) (it would be "improper for the class definition to contain class members whose suits may be barred by the statute of limitation").

The parties agree that the statutory unfair discrimination claim is subject to a one-year limitation period under A.R.S. § 12-541(5). Dkt. ##169 at 6, 186 at 3. Because the unjust enrichment claim is predicated on fraud (*see* Dkt. #1-1 at 20, ¶¶ 61-63), the Court finds the claim subject to the three-year limitation period provided in A.R.S. § 12-543(3). Under the common law "discovery rule," a claim will accrue when "the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. Of Am.*, 898 P.2d 964, 966 (Ariz. 1995). "Fraud practiced to conceal a cause of action will prevent the running of the statute of limitations until its discovery." *Walk v. Ring*, 44 P.3d 990, 999 (Ariz. 2002); *see* A.R.S. § 12-543(3).

**II.     Fraudulent Concealment.**

The doctrine of fraudulent concealment tolls a statute of limitations where a defendant, "by his conduct, conceal[s] the very facts on which plaintiffs' case rests." *London v. Green Acres Trust*, 765 P.2d 538, 546 (Ariz. Ct. App. 1988). Because the focus is on the defendant's conduct, deciding the issue of fraudulent concealment on a class-wide basis is possible. *See id.* at 545-46; *see also Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1092-93 (9th Cir. 2010). Plaintiffs, however, have failed to present sufficient evidence of fraudulent concealment on the part of Defendant.

"The concealment sufficient to toll the statute requires a positive act by the defendant taken for the purpose of preventing detection of the cause of action." *Cooney v. Phoenix Newspapers, Inc.*, 770 P.2d 1185, 1187 (Ariz. Ct. App. 1989). "'[T]he defendant's conduct must be directed to obtaining the delay of which [it] seeks to take advantage by pleading the statute.'" *Id.* (quoting *Jackson v. Am. Credit Bur., Inc.*, 531 P.2d 939, 935 (Ariz. 1975)).

Plaintiffs assert that Defendant engaged in fraudulent concealment by "making its

Rate Manual inaccessible and otherwise substantively inscrutable to the objective 'reasonable person[.]'" Dkt. #186 at 15. Plaintiffs have presented an affidavit of counsel stating that the Arizona Department of Insurance ("DOI") requires an appointment before allowing a visitor to view title insurance filings, that the DOI charges $0.60 per page for making copies of documents, and that the DOI did not maintain a complete copy of Defendant's rate manual. Dkt. #187 ¶¶ 3-6. Policies of the DOI that impede access to rate manuals, however, cannot form the basis for fraudulent concealment. As noted above, fraudulent concealment must be based on actions by Defendant.

Plaintiff's counsel further avers that in 2007 and 2008, two of Defendant's offices located in Maricopa County declined to provide him with a copy of Defendant's then-effective Rate Manual. *Id.* ¶ 7. The fact that Defendant declined to provide a rate manual to a lawyer on two occasions does not, however, show that Defendant concealed its rates from members of the class generally. Actions taken by Defendant with respect to the class as a whole, and designed to prevent the class members from discovering their claims, are required for fraudulent concealment to be established on a class-wide basis. The two-event affidavit of Plaintiff's counsel does not provide such evidence.

In their response memorandum, Plaintiffs claim that a standard HUD-1 settlement statement "'has the imprimatur that the figures reflected on it are true and correct.'" Dkt. #190 at 8-9 (quoting *Levine v. First American Title Insurance Co.*, No. 09-842, --- F. Supp. 2d ---, 2010 WL 152133, at *15 (E.D. Pa. Jan. 14, 2010)). Plaintiffs assert that Defendant used the HUD-1 to conceal that it had overcharged Plaintiffs for title insurance. *Id.* at 9. But Defendant had no role in preparing the HUD-1 signed by Plaintiffs. Dkt. #189 at 6 n.4. Defendant has submitted a copy of the executed HUD-1, which lists First Financial Title Agency of Arizona as the settlement agent. Dkt. #185-1 at 38. Plaintiffs have presented no controverting evidence. Nor have they presented evidence showing Defendant's involvement in preparing HUD-1 settlement statements for class members.

For the limitation period to be tolled under the doctrine of fraudulent concealment, there "must be some trick or contrivance intended to exclude suspicion and prevent inquiry."

*Tovrea Land & Cattle Co. v. Linsenmeyer*, 412 P.2d 47, 63 (Ariz. 1966); *see Cooney*, 770 P.2d at 1187. Plaintiffs have identified no "trick or contrivance" on the part of Defendant sufficient to support a finding of fraudulent concealment, much less one that was undertaken with respect to the class as a whole. The Court therefore cannot conclude that the issue of fraudulent concealment is susceptible to class-wide proof, and cannot accept Plaintiff's proposed temporal scope of the class on the assumption that fraudulent concealment will be proved class-wide, avoiding individual statute of limitations inquiries.

## III.     The Discovery Rule.

Under Arizona's discovery rule, a claim does not accrue until "the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Gust, Rosenfeld*, 898 P.2d at 966. "The burden of establishing that the discovery rule applies to delay the statute of limitations rest[s] on the plaintiff." *Logerquist v. Danforth*, 932 P.2d 281, 284 (Ariz. Ct. App. 1996). "In Arizona, plaintiffs are charged with 'reasonable diligence to discover.'" *Mack v. A.H. Robins Co.*, 573 F. Supp. 149, 153 (D. Ariz. 1983) (citing *Rodriquez v. Manoil*, 450 P.2d 737 (Ariz. Ct. App. 1969); *see Doe v. Roe*, 955 P.2d 951, 962 (Ariz. 1998)).

Defendant argues that to obtain the benefit of delayed accrual, individual class members would need to show that the facts underlying their particular claims were not discoverable through the exercise of reasonable diligence. Dkt. #169 at 7. The Court agrees, and therefore concludes that application of the discovery rule may not be decided class-wide.

Plaintiffs contend that the discovery rule is applied on an objective basis – that is, "whether a reasonable person would have been on notice to investigate." *Walk*, 44 P.3d at 996. Plaintiffs argue that the inquiry therefore will focus on the hypothetical reasonable person and will not require a class-member by class-member inquiry. Although it is true that the discovery rule applies a reasonable person standard, that standard is applied to the specific circumstances of the particular plaintiff. It asks whether a reasonable person in the plaintiff's position would have been on notice to investigate. *See id.* The standard therefore does not eliminate the need to make a class-member-specific inquiry.

This is clear from Plaintiffs' own memorandum. Plaintiffs argue that the discovery rule applies to their unfair discrimination claim because no one involved in *their* purchase of title insurance discussed Defendant's rates with *them*, *they* were not permitted to ask questions about title insurance premiums at *their* closing, *they* had no communications with Defendant concerning *their* title insurance purchase, and *they* were not aware of the alleged overcharge until *they* consulted attorneys. Dkt. #186 at 6-7; *see* Dkt. #190 at 5. Plaintiffs assert that they "typify the Class in this regard" (Dkt. #186 at 6), but their own discussion shows that the discovery rule inquiry focuses on *their* particular transaction and knowledge. The very fact that Plaintiffs ask the Court "to inspect their individual deposition testimony to determine whether [they] acquired actual or constructive knowledge reveals that resolution of the statute of limitations defense will similarly require the trier of fact to examine the particular circumstances of each individual class member." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 323 (4th Cir. 2006). This is in keeping with Arizona's general rule that "the questions of discovery, diligent investigation, and resulting accrual [are] for the jury." *Walk*, 44 P.3d at 999.

Plaintiffs' reliance on the Ninth Circuit's decision in *Yokoyama* is misplaced. *See* Dkt. #186 at 5. In *Yokoyama*, the reasonable person test allowed for class-wide treatment of the reliance issue because, under the state consumer protection law, the inquiry focused on the effect of the *defendant's conduct* on "a reasonable consumer, not the particular consumer." 594 F.3d at 1092. The jury was not required to determine whether each individual class member subjectively relied on the *defendant's omissions*, but would instead "have to determine only whether *those omissions* were likely to deceive a reasonable person." *Id.* at 1093 (emphasis added). That question, unlike the one inherent in the discovery rule, "does not involve an individualized inquiry." *Id.*

Counsel for Plaintiffs argued at the hearing that the Arizona Supreme Court has made clear that it is not enough under the discovery rule for the plaintiff to have knowledge of the injury and its causative agent – the "what" and "who" elements – but rather, "there must also be reason to connect the 'what' to a particular 'who' in such a way that a reasonable person

would be on notice to investigate whether the injury might result from fault." *Walk*, 44 P.3d at 996. The question of when class members had knowledge that a wrong might have occurred is, however, a fact-dependent individualized inquiry. The "'jury must determine at what point [the class member's] knowledge, understanding, and acceptance in the aggregate provided sufficient facts to constitute a cause of action.'" *Id.* (quoting *Doe*, 955 P.2d at 962).

Plaintiffs' counsel further argued that putative class members should not be excluded from the class based solely on hypothetical barriers to a valid claim to relief. But the statute of limitations defense is real, not hypothetical. The unfair discrimination claim is subject to a one-year limitation period, *see* A.R.S. § 12-541(5), and the unjust enrichment claim is subject to a three-year limitation period, *see* A.R.S. § 12-543(3). The class proposed by Plaintiffs spans more than a decade – from April 18, 1997 to the present – and therefore includes numerous claims that arose outside the limitations period.

Plaintiffs cite *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102 (N.D. Cal. 2008), for the proposition that the class period "should include any tolling periods that apply to the claims of the class." Dkt. #186 at 3. The district court in *Kanawi* found only that it was premature at the certification stage to decide the tolling claim on the merits because the complaint included allegations of fraudulent concealment on the part of the defendant. 254 F.R.D. at 112. This Court reached a similar conclusion in the order denying dismissal (Dkt. #22 at 8) and the certification order (Dkt. #102 at 13). The Court thereafter directed the parties, after discovery, to file memoranda on the temporal scope of the class. Dkt. #108. The memoranda have been filed, and the Court has heard oral argument. As Plaintiffs themselves recognize (Dkt. #186 at 2), the question of whether the class period should include any tolling periods properly may be decided. *See* Fed. R. Civ. P. 23(c)(1); *Roberts v. Source for Public Data*, No. 2:08-cv-04167-NKL, 2009 WL 3837502, at *7 (W.D. Mo. Nov. 17, 2009) (deciding at certification stage that it would be "improper for the class definition to contain class members whose suits may be barred by the statute of limitation").

With respect to every class member whose claim arose outside the limitations period,

the Court concludes that individual issues would predominate over common issues because a plaintiff-by-plaintiff inquiry would be required to determine when a plaintiff's claim arose under the discovery rule – when the plaintiff had sufficient notice of his or her claim to trigger the statute of limitations. Because the facts of each individual title insurance transaction vary, and the knowledge and awareness of each class member also vary, this is not a matter that can be proven class-wide.

For example, Defendant provides substantial evidence concerning the publication of the title insurance discounts at issue in this case, including newspaper and magazine articles, television and radio reports, and Internet sites. Dkt. #169 at 9-10. These articles often suggested that consumers shop prices, ask questions, and request discounts: a March 1999 article by the Realty Times explained how borrowers could save money on title insurance by asking for the discounted reissue rate (Dkt. #173-1 at 28-29); the USA Today noted in May 2001 that in many instances "the cost of insuring a title is discounted in a refinancing because ownership is not changing hands" (*id.* at 32-35); a June 2001 article in the Chicago Tribune discussed title insurance discounts for refinances and advised borrowers to "be sure to ask" for a discount if the insurer does not volunteer one (*id.* at 37 38); the Arizona Republic noted in July 2002 that borrowers may be able to negotiate lower title insurance rates and encouraged borrowers to "be sure to do your homework before it comes time to sign those refinance papers (*id.* at 41-46); the New York Times informed readers in an article dated September 2002 that "[t]o save money on your title insurance, HUD suggests asking your current insurer if the policy can simply be reissued" (*id.* at 48-51); an article in the October 28, 2002 edition of Time magazine, titled "How to Spot Those Refinance Rip-Offs," encouraged borrowers to "ask early in the process for the 'reissue' rate on title insurance" (*id.* at 53-55); as a final example, the Wall Street Journal, in February 2005, published an article on "Ways to Save on Title Insurance," noting that "[h]omeowners often are angered at having to pay for another title search and policy when refinancing" and explaining that the cost of reissue policies "can be as little as half the price of a traditional policy" (*id.* at 82-83). Defendant notes (Dkt. #169 at 9-10) that federal and state governments – including Arizona

(*see* Dkt. #173-4 at 35-36) – publicized similar messages about the need to ask questions and shop around for title insurance, as did organizations such as the American Land Title Association (*see id.* at 31-33). Whether individual class members read such media and government reports would be relevant to their level of knowledge concerning title insurance premium discounts. *See Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995) (public information regarding industry trends is easily accessed "with the advent of the 'information superhighway'" and therefore is relevant to the discovery-rule question); *Blue Cross of Cal. v. SmithKline Beecham Clinical Lab., Inc.*, 108 F. Supp. 2d 116, 124 (D. Conn. 2000) ("highly publicized, industry-wide information" was sufficient to put insurers on inquiry notice of defendant's potentially fraudulent billing practices); *see also Walk*, 44 P.3d at 995 (noting that an important inquiry in applying the discovery rule is "'whether the plaintiff's injury or the conduct causing the injury is difficult for plaintiff to detect'") (quoting *Gust, Rosenfeld*, 898 P.2d at 968).

Defendant also notes that the good faith estimate of closing costs signed by Plaintiffs in their 2005 refinancing predicted a title insurance premium of $650, while the final charge two months later was actually $1,508. Dkt ##169 at 4, 8. Plaintiffs did not ask questions about this increase in premiums or otherwise make inquiries about title insurance prices or available discounts. *Id*. Whether other class members had similar experiences with estimated closing costs, asked questions, or received additional information will be relevant in the discovery-rule inquiry. This invariably will be a class-member by class-member inquiry. *See Thorn*, 445 F.3d at 323.

In short, Plaintiffs have not shown in their class certification briefs (Dkt. ##68, 99) or the instant memoranda (Dkt. ##186, 190) that the facts of their transaction and the level of their knowledge arise "from the same event or practice or course of conduct that gives rise to the claims of the other class members[.]" *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 511 (N.D. Cal. 2007) (citation and quotation marks omitted). Because a person-by-person inquiry would be necessary to determine whether class members whose claims arose before the limitations period are entitled to the benefit of the discovery rule, individual issues

would predominate. *See Thorn*, 445 F.3d at 321-23 (denying class certification in insurance discrimination case where the record did not "affirmatively reveal that resolution of the statute of limitations defense on its merits may be accomplished on a class-wide basis"); *Keilholtz v. Lennox Hearth Prods., Inc.*, No. C 08-00836 CW, 2009 WL 2905960, at *4-5 (N.D. Cal. Sept. 8, 2009) (dismissing class suit where the plaintiffs failed to allege "how and when the class members with time-barred claims discovered the alleged fraud"). The Court therefore will not define the class to include individuals whose claims arose before the limitation periods. *See Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678, 684 (D. Kan. 2009) (modifying class definition to exclude time-barred claims and therefore "reflect the appropriate temporal scope"); *Bafus v. Aspen Realty, Inc.*, No. CV-04-121-S-BLW, 2007 WL 793633, at *2 (D. Idaho Mar. 14, 2007) (same); *Daniels v. Fed. Reserve Bank of Chicago*, 194 F.R.D. 609, 618 (N.D. Ill. 2000) (same); *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 433-34 (S.D. Fla. 1991) (same).

**IV.  Class Definition.**

The complaint was filed on May 23, 2008. Dkt. #1-1 at 6-21. The Court will apply a temporal scope to the class by defining it to exclude unfair discrimination claims that accrued before May 23, 2007, and unjust enrichment claims that accrued before May 23, 2005. *See* A.R.S. §§ 12-541(5), 12-543(3). Pursuant to Rule 23(c)(1) and (5), the class definitions (Dkt. #102 at 13-14) are revised as follows:

> **Class for members asserting unfair competition and unjust enrichment claims:** All persons who did not receive the revamping/refinancing discount rate and who (1) on or after May 23, 2007 and before November 19, 2007, paid premiums to Defendant First American Title Insurance Company or its agents for the purchase of lender's title insurance in connection with refinance loans on residential property (a parcel that is or will be used for a one to four family residence, townhouse, condominium or similar property) located in Maricopa County, Arizona, or (2) between November 19, 2007 and May 23, 2008, paid premiums to Defendant or its agents for the purchase of lender's title insurance in connection with refinance loans on residential property located in Maricopa County, Arizona and who had a prior policy of lender's title insurance on the property within five years of the refinance.
>
> **Class for members asserting only unjust enrichment claims:** All persons who did not receive the revamping/refinancing discount rate and who, on or after May 23, 2005 and before May 23, 2007, paid premiums to Defendant First American Title Insurance Company or its agents for the purchase of

lender's title insurance in connection with refinance loans on residential property (a parcel that is or will be used for a one to four family residence, townhouse, condominium or similar property) located in Maricopa County, Arizona.

*See Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 431 (S.D.N.Y. 2009) (exercising discretion under Rule 23(c)(5) "to create a subclass of class members who do not have timely claims under [the state consumer protection law], and whose only claim is for unjust enrichment").

**V. Plaintiffs as Class Representatives.**

Because Plaintiffs refinanced their mortgage in September 2005 (Dkt. #1-1 at 16, ¶ 45), they are not members of the classes asserting both unfair discrimination and unjust enrichment claims and cannot represent those classes. Counsel for Defendant asserted at the hearing that the claim should be decertified. Plaintiffs' counsel requested leave to substitute class representatives.

The parties shall simultaneously file memoranda on this issue no later than **April 23, 2010**. The memoranda shall not exceed **seven** pages in length. The parties shall file simultaneous responses no later than **April 30, 2010**. The responses shall not exceed **four** pages in length. No reply memoranda shall be filed. The Court will decide the issue without oral argument. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

**IT IS ORDERED:**

1. The class definition (Dkt. #102 at 13-14) is revised as set forth above.
2. The parties shall file memoranda regarding the propriety of substitute class representatives pursuant to the briefing schedule provided above.

DATED this 14th day of April, 2010.

_David G. Campbell_
David G. Campbell
United States District Judge