**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Perez and Elizabeth Perez, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>First American Title Insurance Company,<br><br>Defendant. | No. CV-08-1184-PHX-DGC<br><br>**ORDER** |

Defendant First American Title Insurance Company has filed a motion to strike Plaintiffs' supplemental expert report. Doc. 303. Both parties have filed cross-motions for summary judgment. Docs. 317, 321. The motions are fully briefed, and the Court heard oral argument on August 31, 2011. For reasons that follow, the Court will grant in part Plaintiffs' motion for summary judgment, deny Defendant's motion to strike, and deny Defendant's motion for summary judgment.

**I.   Motion to Strike.**

Defendant asks the Court to strike the supplemental report of Plaintiffs' expert Bruce McFarlane. Doc. 303. Defendant notes that the report was served on May 13, 2011, almost one year after the deadline for initial expert reports and ten months after the date for rebuttal disclosures. Defendant argues that the untimely disclosure is neither substantially justified nor harmless, and should therefore be stricken under Federal Rule of Civil Procedure 37(c)(1).

Although the Court normally enforces expert deadlines vigorously, the Court concludes that the supplemental report of Mr. McFarlane is substantially justified. On August 27, 2010, the Court entered an order permitting Plaintiffs to obtain additional electronic discovery from Defendant. Doc. 237. The Court concluded that Plaintiffs should be permitted greater access to electronic databases that might enable them to identify members of the class entitled to recovery in this case. As a result, Plaintiffs and Defendant engaged in an electronic discovery exchange during the months of September and October, 2010. The Court was asked to intervene and provide rulings at various stages in this exchange. *See* Docs. 238, 242, 250.

Approximately six weeks after receiving the additional electronic discovery, Plaintiffs filed a motion seeking permission to conduct further discovery and disclose a supplemental expert report. Doc. 268. The Court entered an order on March 2, 2011, denying the request for additional discovery. Doc. 300. Because Plaintiffs had concluded in the meantime that permission was not needed to submit a supplemental expert report and had therefore withdrawn the request (Doc. 268), the Court did not rule on the motion for leave to file a supplemental report. Plaintiffs filed the supplemental report on May 13, 2011, approximately two months after the Court denied their request for additional discovery.

The Court concludes that a supplemental expert report was substantially justified in light of the significant electronic data produced by Defendant in September and October of 2010. Because this data was produced after the deadlines for disclosing expert and rebuttal reports, it could not have been included in Plaintiffs' earlier expert report. It is true that Plaintiffs could have provided the supplement earlier than May of 2011, but the Court notes that issues raised in the motion filed in December of 2010 and resolved in March of 2011 (Docs. 268, 300) affected the content of the supplemental report. Once the Court had ruled, Plaintiffs submitted the report within two months.

Because the Court finds that the supplemental report was substantially justified,

striking the report is not appropriate under Rule 37(c)(1). In fairness, Defendant will be afforded an opportunity to respond to the supplemental report. Defendant may file an expert response to the report by October 28, 2011. Plaintiffs may depose Defendant's expert with respect to the new response.

**II.     Motions for Summary Judgment.**

   **A.     Legal Standards.**

The principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *Celotex*, 477 U.S. at 323.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Perezes move for summary judgment on their unjust enrichment claim, and Defendant moves for summary judgment on all claims. The Court will address the Perezes' claims first, followed by the class claim. The Court will refer to the Perezes as "Plaintiffs" and to the class simply as "the class."

### B. Plaintiffs' Unjust Enrichment Claim.

The following facts are undisputed.[1] Plaintiffs refinanced their loan in the amount of $343,000 and paid for lender title insurance, more specifically an ALTA Extended Coverage Loan Policy ("Policy"). Doc. 317-11 at 2-3. The Policy was underwritten by Defendant First American Title Insurance Company ("First American") (*id.* at 3; Doc. 325-1 at 2), and was purchased through First Financial Title Agency of Arizona ("First Financial") (Doc. 317-11 at 3). First Financial and First American had an agreement pursuant to which First Financial was authorized to issue policies of title insurance underwritten by First American. Doc. 325-1 at 2:18-25. The "premium for [a First American] 'extended loan policy' with a coverage amount between $340,001.00 and $345,000.00 according to the Maricopa County Rate Schedule" was $1,549.00 at the time of the transaction, a figure the Court will refer to as the "Basic Rate." Doc. 325-1 at 3:18-21. Plaintiffs were charged and paid $1,548.00. Doc. 317-11 at ¶ 10.

At the time of the transaction, First American's Arizona Rate Manual allowed for a discount of 35% on "revamping/refinancing" policies – or, otherwise stated, a "Refinance Rate" of 65% of the Basic Rate. Docs. 325-1 at ¶ 11; 317-6 at 9. The criteria for receiving the Refinance Rate were (a) that the transaction involved a new first mortgage loan, (b) used to refinance an existing loan, (c) on residential property, defined as a vacant or improved parcel which is or will be used for a one to four family residence, condominium, townhouse, or similar property, (d) located in Maricopa County, Arizona. Doc. 317-6 at 9 (§ 213.1 of the First American Rate Manual).[2] Plaintiffs satisfied these

---

[1] Because the parties' statements of facts indicate agreement as to these facts, the Court will cite only to the filing that contains the affirmative statement of fact. Citations to pages in the Court's docket are to page numbers at the top of the page.

[2] First American argues that an additional criterion existed: that the owner had title insurance on the property within the five years before the refinancing. The Court concludes, however, that this criterion was not a part of First American's Rate Manual for Maricopa County when Plaintiffs' refinanced their property. The Rate Manual clearly imposed this criterion for counties other than Maricopa (§ 213), and clearly omitted it for Maricopa County (§ 213.1). *See* Doc. 317-6 at 8-9.

1  criteria, and yet were charged the Basic Rate, rather than the Refinance Rate, by First Financial. First Financial is now out of business. Doc. 325 at ¶ 21; LRCiv 56.1(b) (stating that each statement of fact is deemed admitted if not controverted).

### 1.     **Plaintiffs' Arguments for Summary Judgment in Their Favor.**

Plaintiffs argue that they are entitled to summary judgment on their unjust enrichment claim because they were entitled to the Refinance Rate, First Financial did not give them the Refinance Rate, First Financial was an agent of First American, and First American was unjustly enriched as the principal of First Financial. Doc. 317 at 3-4. First American responds that it was not enriched because First Financial did not remit any portion of Plaintiffs' premium to First American (Doc. 325 at 2-3), that First Financial was "an independent title company that operated its own business" (*id.* at 5), and that there is a genuine dispute about whether enrichment would be unjust under these circumstances (*id.* at 6-12).[3] Plaintiffs reply that they may recover from the principal, that First Financial was an agent of First American, and that First American's enrichment is unjust as a matter of law. Doc. 331.

A claim of unjust enrichment under Arizona law has five elements: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011) (citing *City of Sierra Vista v. Cochise Enters., Inc.*, 697 P.2d 1125, 131-32 (Ariz. Ct. App. 1984)). "Thus, a plaintiff must demonstrate that the defendant received a benefit, that by receipt of that benefit the defendant was unjustly enriched at the plaintiff's expense, and that the circumstances were such that in good conscience the defendant should provide compensation." *Id.* (citing *Murdock-Bryant*

---

[3] Defendant suggests that Plaintiffs have not shown they satisfied the requirement of title insurance on the property within five years before the refinancing transaction. Doc. 325 at 9. As noted in the previous footnote, the Court finds that this was not a requirement for the Refinancing Rate when Plaintiffs obtained their title insurance.

*Constr., Inc. v. Pearson*, 703 P.2d 1197, 1202 (Ariz. 1985)).  The elements in dispute between the parties here are whether First American was enriched and whether there is an absence of justification for the enrichment.  A genuine, material factual dispute on either element would preclude summary judgment for Plaintiffs.

**(a)   Payments to Agents, Generally.**

"[P]ayment to the agent constitutes payment to the principal, as a matter of law" in Arizona.  *Copper Hills Enters., Ltd. v. Ariz. Dep't. of Revenue*, 153 P.3d 407, 413 (Ariz. Ct. App. 2007) (citing *Ariz. Storage & Distrib. Co. v. Rynning*, 293 P. 16, 17-18 (Ariz. 1930)).  First American tries to limit this principle to collection agents, but the Court is not persuaded that the principle – framed broadly in *Copper Hills* – is so limited.  First American cites no case applying this limitation.  Doc. 325 at 4-5.  Moreover, First American does not explain why, as an equitable matter (unjust enrichment is an equitable remedy), the burden to recover from a defunct agent should lie with a consumer rather than with the agent's principal.  First American was the entity that chose First Financial to act on its behalf and presumably regulated the relationship.  As Arizona courts have explained in other contexts, "where one of two innocent parties must suffer because of the action of a third person, the loss should fall upon the one who, by his conduct, created the circumstances which enabled the third party to perpetrate the wrong or cause the loss."  *Patterson Motors, Inc. v. Cortez*, 408 P.2d 231, 233 (Ariz. Ct. App. 1965) (citing *Dissing v. Jones*, 333 P.2d 725, 726 (Ariz. 1958)).  The Court will adhere to the general principle that payment to an agent constitutes payment to the principal.

First American makes the related argument that First Financial failed to remit any of Plaintiffs' premium to First American, thereby precluding any finding that First American was enriched by the premium.  Doc. 325 at 4.  This argument is not persuasive because Arizona law applies the "payment to agent" principle notwithstanding the fact that payment to an agent "was not credited on [the principal's] books, and [the principal] denies receiving it."  *Rynning*, 293 P. at 17.

First American asserts in the alternative that its agreement with First Financial entitled it to remittance of only 12% of the insurance premium charged by First Financial, and that therefore the "payment to agent" principle does not apply to it. Doc. 325 at 5:3-6. Assuming for the sake of argument that the 12% figure is construed as the remittance amount rather than 88% being construed as the agent's fee for performance, this dispute concerns the amount of damages, not the question of liability.

First American also suggests that a principal is not liable for the fraudulent acts of its agent absent concerted effort, citing to *Pearll v. Selective Life Insurance Co.*, 444 P.2d 443, 446 (Ariz. Ct. App. 1968). *See* Doc. 325 at 5. Plaintiffs do not contend that First Financial acted fraudulently.

In sum, if First Financial was an agent of First American with respect to the transaction at issue, then at least some of Plaintiffs' payment to First Financial must be imputed to First American.

### (b)   First Financial's Agency Status.

"In its most elemental terms, an agent is one who acts on behalf of another." *Se. Ariz. Med. Ctr. v. Ariz. Health Care Cost Containment Sys. Admin.*, 935 P.2d 854, 860 (Ariz. Ct. App. 1996) (internal quotation marks and citation omitted). Arizona has adopted the definition of "agency" embodied in the Restatement (Third) of Agency ("Restatement") § 1.01. *See State Farm Ins. Cos. v. Premier Manufactured Sys., Inc.*, 172 P.3d 410, 414 (Ariz. 2007) (citing comments to Restatement § 1.01). Under § 1.01, "[a]gency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

Plaintiffs' motion asserts in a footnote that First Financial was undisputedly an agent of First American. Doc. 317 at 9 n.2. In their reply, Plaintiffs assert that First American's interrogatory answer characterized First Financial as one if its agents "authorized to issue [First American] residential title insurance policies," and that under

the underwriting agreement "First Financial [had] actual authority to accept policy premiums on First American's behalf." Doc. 331 at 3 (quoting Doc. 317-5 at 6).

At oral argument, counsel for First American conceded that First Financial was First American's agent for purposes of selling the insurance to Plaintiffs. Counsel made clear that First American is not arguing that First Financial was not its agent in this transaction. As a result, the Court finds there is no genuine issue regarding whether First Financial was an agent of First American for purposes of Plaintiffs' transaction.

### (c) Unjust Enrichment.

Because the Court has found that First Financial was an agent of First American and that payment to an agent is payment to the principal, the only remaining issue is whether the enrichment of First American was unjust as a matter of undisputed fact.

According to First American's Rate Manual in effect at the time of Plaintiffs' transaction, application of the Refinance Rate was "at the sole discretion of management if the original loan was not insured by [First American]." Doc. 317-6 at 9. Plaintiffs asserted in their papers and at oral argument that First American's management exercised this discretion to adopt a corporate policy of granting the Refinance Rate in all qualifying refinance transactions. Doc. 317-11 at 4. Plaintiffs noted that First American's Rule 30(b)(6) witnesses, Steve Hyman and John Graham, testified that First American's policy was to grant the rate to every refinance customer who qualified. Doc. 317 at 5-6. Counsel for First American conceded this fact at oral argument, asserting that First American's generous decision to afford every qualifying borrower the Refinance Rate should not be turned against it as a basis for liability. First American also argued in its papers and at the hearing that Plaintiffs bear the burden of proving why they were denied the Refinance Rate and that the reason was unjust, and that Plaintiffs cannot shift to First American the burden of proving that the denial was not unjust.

The Court concludes that the undisputed facts show an absence of justification for charging Plaintiffs the full Basic Rate. Plaintiffs have presented undisputed evidence that

they satisfied the criteria for the Refinance Rate under § 213.1 of First American's Rate Manual in effect at the time; that First American's policy was to grant the Refinance Rate to every borrower who satisfied the criteria; that Plaintiffs nonetheless were charged the full Basic Rate, rather than the 65% Refinance Rate, for their First American title insurance; and that they paid the full premium to First American's agent, First Financial. In short, Plaintiffs have shown that they qualified for and were denied the discount that First American had decided to grant every qualifying borrower. They have shown an absence of any justification for their having been charged the full Basic Rate. Because an "absence of justification" is all that is required to satisfy the "unjust" component of unjust enrichment under Arizona law, *Freeman*, 245 P.3d at 936, the Court concludes that Plaintiffs have established First American's unjust enrichment as a matter of undisputed fact.

First American argued at the hearing that charging Plaintiffs the full premium was not unjustified because First American had the discretion to do so under its Rate Manual, and Plaintiffs did receive a First American policy of title insurance in return for their premium. For two reasons, the Court cannot conclude that First American's discretion to charge the full premium justified the denial of the Refinance Rate to Plaintiffs. First, the undisputed facts show that First American elected to grant the Refinance Rate to every qualifying borrower. In other words, it can be said that First American exercised its discretion to grant the Refinance Rate, and therefore cannot rely on its discretion to justify denial of the rate. Second, First American conceded at the class certification hearing, and does not dispute now, that it never consciously exercised its discretion to deny the rate to any borrower. As examples, it did not identify classes of borrowers who would be denied the rate, did not set up time periods when the rate would or would not be available, and did not otherwise identify circumstances under which the rate would be denied. Because it did not exercise its discretion to deny the rate in any transaction, it cannot rely on that discretion as the justification for denying the rate to Plaintiffs.

First American asserts that it does not know why its agent, First Financial, failed to give Plaintiffs the Refinance Rate. Indeed, it has even suggested that First Financial may have intended to grant Plaintiffs the Refinance Rate and simply made a math error. But given First American's policy to grant the rate to all qualifying borrowers, it cannot claim that denial of the rate was justified because its agent's reasons for denying the rate are unknown, or by arguing that its agent might have made an error. Clearly, there is an absence of justification in this case for Plaintiffs having been denied the Refinance Rate for which they qualified and which it was First American's policy to grant.

### 2. Defendant's Arguments for Summary Judgment in Its Favor.

First American asserts it is entitled to summary judgment because Plaintiffs have failed to show First American was enriched. Doc. 321 at 16-18. First American argues that First Financial, "[i]n direct contravention of its agency agreement with First American," failed to remit any portion of Plaintiffs' premium to First American. *Id.* at 17. The Court ruled above that payment to an agent is payment to the principal, and that First Financial was an agent of First American. Accordingly, lack of receipt from First Financial is not a valid ground for summary judgment in favor of First American.

### 3. Conclusion.

In light of the above, the Court finds no genuine issues exist to preclude summary judgment in favor of Plaintiffs and against First American on the issue of liability for unjust enrichment. The amount of damages incurred by Plaintiffs will be determined through later proceedings.

### C. Plaintiffs' Unfair Discrimination Claim.

Claim 1 in the complaint alleges unfair discrimination in transactions of insurance, in violation of A.R.S. § 20-448(C). Doc. 1-1 at 19. First American asserts that it is entitled to summary judgment because the claim is time-barred under the one-year statute of limitations established by A.R.S. § 12-541(5). Doc. 321 at 8-16. Plaintiffs oppose, arguing they could not reasonably have discovered the existence of their claim within one

year from the transaction closing date. Doc. 326 at 12-18. First American replies that Plaintiffs have failed to show they took a single step to exercise reasonable diligence in discovering their claim. Doc. 330 at 7.

Arizona law requires actions "[u]pon a liability created by statute, other than a penalty or forfeiture," be brought "within one year after the cause of action accrues." A.R.S. § 12-541(5). The statute whose violation is alleged by the complaint prohibits a person from "mak[ing] or permit[ting] any unfair discrimination in favor of particular persons or between insureds or subjects of insurance having substantially like insuring, risk and exposure factors, or expense elements, in the terms or conditions of any insurance contract, or in the rate or amount of premium charged." A.R.S. § 20-448(C).

In light of the parties' papers, the dispositive issue is whether the suit was brought within one year after the cause of action accrued. Under Arizona law, the running of the statute of limitations is an affirmative defense, and "[i]n general, such disputes are questions of fact for the jury." *Lee v. State*, 242 P.3d 175, 178 (Ariz. Ct. App. 2010). In Arizona, "a plaintiff's cause of action does not accrue until the plaintiff knows or, *in the exercise of reasonable diligence, should know*, the facts underlying the cause [of action]." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 966 (Ariz. 1995) (emphasis added).[4] First American's motion is predicated only on the objective part of this test, italicized in the quotation above. Doc. 321 at 9-13. The Court will therefore not address the subjective part of the standard.

First American has the burden of proving the statute-of-limitations defense at trial. *Lee*, 242 P.3d at 179. On summary judgment, if the defendant establishes a prima facie case showing the cause of action accrued outside the limitations period, the plaintiff must raise a genuine issue of fact showing that he exercised reasonable diligence in pursuing

---

[4] First American's reply does not maintain that this rule is inapplicable to claims under A.R.S. § 20-448(C) (*see* Doc. 330) – only that Plaintiffs fail to make the showing of reasonable diligence under the rule. Therefore, the Court will assume that the discovery rule applies to this claim.

- 11 -

his potential claim. *See Logerquist v. Danforth*, 932 P.2d 281, 284 (Ariz. Ct. App. 1996) (citing *Ulibarri v. Gerstenberger*, 871 P.2d 698, 702 (Ariz. Ct. App. 1993)).

First American argues that had Plaintiffs been diligent they should have discovered their claim because the premium reflected on the HUD-1 closing statement was more than double the figure on the Good Faith Estimate ("GFE") despite the loan amount increasing by only 15%. Doc. 321 at 10. First American also argues that sufficient information was available in the media about lower refinancing rates that Plaintiffs, had they been diligent and stayed in tune with the news, would have learned enough to inquire whether they qualify for a lower premium. *Id.* at 11. Plaintiffs argue that nothing in the closing paperwork would have put an objective refinancing consumer on notice that he was eligible for a title insurance premium discount, that he was denied that discount arbitrarily, or that other consumers received the discount – elements required for § 20-448(C) claims. Doc. 326 at 13. Plaintiffs also argue that nothing in the media reports would have generated this notice either. *Id.*

This is a close case. Although the figures on the HUD-1 did not by themselves indicate that something was amiss, the fact that the figures were materially different from the GFE may have provided Plaintiffs with inquiry notice. The final transaction was based on a higher loan amount than that on the GFE, however, and Plaintiffs contend that no one explained how the title insurance premium was calculated. And as to whether a reasonable person should have sought out media reports regarding every charge on a refinance transaction, First American has cited no case from which the Court can find that Arizona law imposes such a burden on consumers. In light of the above, the Court concludes that the issue of when the cause of action accrued in this case is an issue of fact best left to the jury. *Lee*, 242 P.3d at 178.

### D.   The Class's Unjust Enrichment Claim.

Because the Court has denied Defendant's motion to strike the report of Bruce McFarlane, the Court concludes that factual issues preclude Defendant's request

for summary judgment on the class claims. Mr. McFarlane's supplemental report purports to provide information from Defendant's databases concerning 3,477 individuals who qualified for and were denied the Refinance Rate. Defendant argues that Mr. McFarlane's opinions are flawed – that he misreads databases, relies on unreliable data, and makes unfounded assumptions. Defendant does not argue that Mr. McFarlane is unqualified to render his opinions, nor that his opinions should be precluded under Federal Rule of Evidence 702. Defendant instead argues that McFarlane's opinions are wrong.

As the parties well understand, the Court's task on summary judgment is not to resolve factual disputes. The vigorous disagreement between the parties on the reliability of Mr. McFarlane's opinions must be resolved by the jury. Defendant's motion for summary judgment will therefore be denied.

### III. Class Action Issues and Settlement Conference.

The Court has entered summary judgment on liability in favor of Plaintiffs. Although Plaintiffs suggested in their motion that such a judgment would include the class, Plaintiffs' counsel asserted at oral argument that separate proof of Defendant's liability to the class is required – that Plaintiffs' prevailing on their claim is not enough for the class to prevail as well. Given this concession, the Court will not at this time enter judgment in favor of the class on liability. The Court will, however, require the parties to address this issue in briefs submitted before the final pretrial conference.

At the hearing on these motions, the Court also talked with the parties at some length about the trial of this case, the role of the class representatives at trial, the need (or lack thereof) for class evidence, and the claims process that might follow conclusion of this case. The Court continues to have the concerns expressed during the hearing. The parties are directed to address these issues in preparing for the final pretrial conference.

Finally, the Court will require the parties to participate in a settlement conference in late September with a mediator from the Ninth Circuit. The Court has found the

mediator to be very effective in helping parties reach agreement, and believes that such a conference is warranted before the parties incur the expense of trial.

**IT IS ORDERED:**

1. Defendant's motion to strike (Doc. 303) is **denied**.
2. Plaintiffs' motion for summary judgment (Doc. 317) is **granted** on the issue of liability on the unjust enrichment claim, and **denied** on the question of damages.
3. Defendant's motion for summary judgment (Doc. 321) is **denied**.
4. Defendant may disclose an expert report that responds to Mr. McFarlane's supplemental expert report by **October 28, 2011**. Plaintiffs will be permitted to depose Defendant's expert with respect to the new report.
5. The parties shall engage in a settlement conference with a visiting Ninth Circuit mediator on a date in late September to be set by separate order, and shall file a report within five days of the mediation reporting on the outcome. Both parties shall be represented at the mediation by a representative (in addition to litigation counsel) who has full authority to make settlement decisions and resolve this case.
6. The Court will set a final pretrial conference by separate order. At least 15 days in advance of the final pretrial conference, the parties shall file memoranda, not to exceed 12 pages, addressing (a) the process for determining Plaintiffs' damages on the unjust enrichment claim, (b) whether the liability judgment entered in favor of Plaintiffs in this order should apply to the class, and (c) the class trial issues raised by the Court during the hearing on these motions.

Dated this 1st day of September, 2011.

_____
David G. Campbell
United States District Judge